1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMIT FRIAS, Individually and on Behalf of All Others Similarly Situated,<br><br>                           Plaintiff,<br><br>   v.<br><br>DENDREON CORPORATION, MITCHELL H. GOLD, GREGORY T. SCHIFFMAN, and HANS E. BISHOP,<br><br>                        Defendant. | No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS
Case No.



000700-00  466442 V1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................1

II.     JURISDICTION AND VENUE ..............................................................1

III.    PARTIES ...............................................................................................1

IV.     PLAINTIFF'S CLASS ACTION ALLEGATIONS..................................3

V.      SUBSTANTIVE ALLEGATIONS ..........................................................5

        A.    Defendants' Materially False and Misleading Statements Made During the
              Class Period ..................................................................................5

        B.    The True Financial and Operational Condition of Dendreon is Belated
              Disclosed......................................................................................14

VI.     CAUSATION AND ECONOMIC LOSS................................................18

VII.    ADDITIONAL SCIENTER ALLEGATIONS ........................................19

VIII.   APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-
        MARKET DOCTRINE ........................................................................22

IX.     NO SAFE HARBOR ............................................................................23

X.      BASIS OF ALLEGATIONS ................................................................24

FIRST CLAIM  VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND
        RULE 10B-5 PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS.....24

SECOND CLAIM VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
        AGAINST INDIVIDUAL DEFENDANTS .......................................................27

JURY TRIAL DEMANDED........................................................................29

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - i
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  466442 V1

# I.    INTRODUCTION

This is a federal class action on behalf of purchasers of the securities of Dendreon Corporation ("Dendreon" or the "Company") between January 7, 2011, and August 3, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  As alleged herein, defendants published a series of materially false and misleading statements which defendants knew and/or deliberately disregarded were false and misleading at the time of such publication, and which omitted to reveal information necessary to make defendants' statements, in light of such omissions, not materially false and misleading.

## II.    JURISDICTION AND VENUE

1.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

3.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b).   Dendreon maintains its principal place of business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

4.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## III.    PARTIES

5.    Plaintiff Amit Frias, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of Dendreon at artificially inflated prices during the Class Period and has been damaged thereby.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 1
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  466442 V1

6.      Defendant **DENDREON CORPORATION** is a Delaware corporation with its principal place of business at 3005 First Avenue Seattle, Washington  98121.  According to the Company's profile, Dendreon is a biotechnology company that engages in the discovery, development, and commercialization of therapeutics to enhance the treatment of cancer. The Company offers active cellular immunotherapy ("ACI") and small molecule product candidates to treat various cancers. The Company's principal product is PROVENGE (sipuleucel-T), an active cellular immunotherapy for the treatment of metastatic, castrate-resistant prostate cancer.

7.      Defendant **MITCHELL H. GOLD** ("Gold") is, and during the Class Period was, Chief Executive Officer and President of the Company.  During the Class Period, defendant Gold signed and certified the Company's SEC filings, including but not limited to Dendreon's Form 10-Q.  Also, during the Class Period, while in possession of material adverse non-public information, defendant Gold sold over 128,000 shares of his privately held Company stock to reap illicit gross proceeds of over $4.84 million.

8.      Defendant **GREGORY T. SCHIFFMAN** ("Schiffman") is, and during the Class Period was, Chief Financial Officer and Executive Vice President of the Company.  During the Class Period, defendant Schiffman signed and certified the Company's SEC filings, including but not limited to Dendreon's Form 10-Q.  Also, during the Class Period, while in possession of material adverse non-public information, defendant Schiffman sold over 3,900 shares of his privately held Company stock to reap illicit gross proceeds of over $156,000.

9.      Defendant **HANS E. BISHOP** ("Bishop") is, and during the Class Period was, Chief Operating Officer and Executive Vice President of the Company.  During the Class Period, defendant Bishop signed the Company's SEC filings, including but not limited to Dendreon's Form 10-Q.  Also, during the Class Period, while in possession of material adverse non-public information, defendant Bishop sold over 4600 shares of his privately held Company stock to reap illicit gross proceeds of over $185,000.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 2
Case No.



000700-00  466442 V1

10.     The defendants referenced above in ¶¶ 7-9 are referred to herein as the "Individual Defendants."

11.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Dendreon's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

12.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Dendreon securities by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme:  (i) deceived the investing public regarding Dendreon's business, operations, management and the intrinsic value of Dendreon securities; (ii) enabled defendants to artificially inflate the price of Dendreon securities; (iii) enabled Dendreon insiders to sell millions of dollars of their privately held Dendreon shares while in possession of material adverse non-public information about the Company; and (iv) caused plaintiff and other members of the Class to purchase Dendreon securities at artificially inflated prices.

## IV.     PLAINTIFF'S CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Dendreon between January 7, 2011, and August 3, 2011,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 3
Case No.



000700-00  466442 V1

1  inclusive (the "Class") and who were damaged thereby.  Excluded from the Class are defendants,

2  the officers and directors of the Company, at all relevant times, members of their immediate

3  families and their legal representatives, heirs, successors or assigns and any entity in which

4  defendants have or had a controlling interest.

5          14.     The members of the Class are so numerous that joinder of all members is

6  impracticable.  Throughout the Class Period, Dendreon common stock was actively traded on the

7  Nasdaq.  As evidence of this, as of July 28, 2011, the Company had over 148.85 million shares

8  of common stock issued and outstanding, as well as options and/or debt instruments. While the

9  exact number of Class members is unknown to plaintiff at this time and can only be ascertained

10  through appropriate discovery, plaintiff believes that there are hundreds or thousands of

11  members in the proposed Class.  Record owners and other members of the Class may be

12  identified from records maintained by Dendreon or its transfer agent and may be notified of the

13  pendency of this action by mail, using the form of notice similar to that customarily used in

14  securities class actions.

15          15.     Plaintiff's claims are typical of the claims of the members of the Class as all

16  members of the Class are similarly affected by defendants' wrongful conduct in violation of

17  federal law that is complained of herein.

18          16.     Plaintiff will fairly and adequately protect the interests of the members of the

19  Class and has retained counsel competent and experienced in class and securities litigation.

20          17.     Common questions of law and fact exist as to all members of the Class and

21  predominate over any questions solely affecting individual members of the Class.  Among the

22  questions of law and fact common to the Class are:

23                  (a)     whether the federal securities laws were violated by defendants' acts as

24  alleged herein;

25

26

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 4
Case No.



1         (b)     whether statements made by defendants to the investing public during the

2   Class Period misrepresented material facts about the business, operations and management of

3   Dendreon; and

4         (c)     to what extent the members of the Class have sustained damages and the

5   proper measure of damages.

6         18.    A class action is superior to all other available methods for the fair and efficient

7   adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

8   the damages suffered by individual Class members may be relatively small, the expense and

9   burden of individual litigation make it impossible for members of the Class to individually

10   redress the wrongs done to them.  There will be no difficulty in the management of this action as

11   a class action.

12   **V.    SUBSTANTIVE ALLEGATIONS**

13   **A.    Defendants' Materially False and Misleading Statements Made During the Class
    Period**

14   
15         19.    On January 7, 2011, the inception of the Class Period, Defendants published a

16   press release and filed a Form 8-K stating that the Company had successfully introduced it chief

17   product, PROVENGE, and was poised for significant growth.  The release stated in part:

> "Last year was foundational for Dendreon with the successful
> introduction of PROVENGE as the world's first autologous
> cellular immunotherapy," said Mitchell H. Gold, MD, president
> and chief executive officer.  "As we look to 2011 and beyond, we
> are positioned for significant growth with our increased capacity in
> the U.S., our European strategy for filing now set, and our progress
> in advancing our ACI pipeline in bladder cancer.  Most
> importantly, we are proud to deliver on our commitment to
> transform the lives of patients with cancer by making PROVENGE
> more broadly available in the U.S. and abroad."

23         20.    In addition to the  press release, on January 7, 2011, the Company held a

24   conference call with shareholders to discuss the introduction and development of PROVENGE,

25   in which Gold stated, in part, that:

26

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 5
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  466442 V1

1
2
3
4
5
6

> In 2011, we will turn the volume up on our awareness efforts to
> ensure that we are maximizing our available capacity.  Importantly
> we are proud about the quality of our interactions with the
> physicians.  Based on a survey commissioned, the overall
> experience with PROVENGE has been positive.  On a scale of 7,
> the average score was 5.5. on overall satisfaction, 5.6 on likelihood
> of using the product again, 5.6 on the likelihood of recommending
> the use of the product, and 5.7 for ease of logistics.  We are
> reiterating our 2011 revenue guidance to be approximately $350 to
> $400 million, with approximately half that occurring in the fourth
> quarter.

7       21.     On March 10, 2011, defendants published a release designed to condition

8   investors to believe that the Company was successfully implementing the launch of its chief

9   product PROVENGE.   This release stated, in part, the following:

10      Dendreon Expands Launch of PROVENGE

11      FDA Approval of Additional 36 Workstations in New Jersey
        Manufacturing Facility Provides Increased Availability of First-in-
12      Class Prostate Cancer Immunotherapy PROVENGE-

13      SEATTLE, March 10, 2011 /PRNewswire/ -- Dendreon
        Corporation (Nasdaq: DNDN) announced today that the U.S. Food
14      and Drug Administration (FDA) approved the remainder of its
        New Jersey manufacturing facility, allowing the company to
15      significantly increase the availability of PROVENGE®
        (sipuleucel-T) to help meet the needs of patients with
16      asymptomatic or minimally symptomatic metastatic castrate
        resistant (hormone refractory) prostate cancer.
17

18      Last April, upon receiving FDA approval of PROVENGE,
        Dendreon launched the world's first patient-specific prostate
        cancer immunotherapy from 12 workstations in its New Jersey
19      facility.  With the FDA approval of 36 additional workstations, the
        New Jersey facility will now have a total of 48 approved
20      workstations.  Dendreon will bring these new workstations online
        in a staged approach.
21

22      PROVENGE is designed to induce an immune response against
        prostatic acid phosphatase (PAP), an antigen expressed in most
        prostate cancers, and is the first in a new therapeutic class of drugs
23      known as autologous cellular immuno-therapies.

24      "PROVENGE has the largest reported survival benefit in patients
        with asymptomatic or minimally symptomatic metastatic prostate
25      cancer, with the most common side effects being primarily
        transient and mild to moderate. As such, PROVENGE is the
26      standard of care for these patients," said Daniel George, M.D.,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 6
Case No.

000700-00  466442 V1



director of GU Medical Oncology and the Prostate Clinic at Duke
University Medical Center. "The increased availability of
PROVENGE will allow more treatment centers and patients across
the country to access this important treatment option."

In anticipation of the availability of the additional workstations,
Dendreon expects to have approximately 225 infusion centers
prepared to treat their first patient by the end of the second quarter,
approximately 450 infusion centers upon entering the fourth
quarter, and approximately 500 by the end of 2011.

22.    In addition to the foregoing, defendant Gold used the March 10, 2011 release to

further condition investors to believe that PROVENGE was being accepted by the medical

community, according to plan, by stating the following:

"The significant 4.1 month median survival benefit PROVENGE
demonstrated represents a major milestone in the treatment of
metastatic CRPC. To put PROVENGE in perspective, over the
past 15 years, there have only been three other therapies in any
metastatic cancer setting to show a survival benefit of four months
or more," said Mitchell H. Gold, M.D., president and chief
executive officer of Dendreon. "With FDA approval of the
additional NJ workstations, we now have significant capacity to
make this important therapy available to the many men across the
U.S. who may benefit from it."

23.    On May 2, 2011, defendants published a release announcing purported results for

the first quarter of 2011, the period ended March 31, 2011.  This release again guided investors

to believe that the roll-out of PROVENGE was proceeding according to plan, in part, as follows:

Dendreon Reports First Quarter 2011 Financial Results

SEATTLE, May 2, 2011 /PRNewswire/ -- Dendreon
Corporation (Nasdaq: DNDN) today reported results for the first
quarter ended March 31, 2011. Revenue for the quarter
ended March 31, 2011 was $28.1 million compared to $21,000 for
the quarter ended March 31, 2010.

The GAAP net loss for the quarter ended March 31,
2011 was $111.8 million, or $0.77 per share, compared to $125.7
million, or $0.96 per share for the quarter ended March 31,
2010 (which included a non-cash charge of $68 million loss from
valuation of warrant liability). On a pro-forma basis, excluding
non-cash expenses associated with depreciation and amortization,
non-cash imputed interest expense, and non-cash deferred stock
compensation, Dendreon's net loss was approximately $85
million or $0.59 per share. Dendreon's total operating expenses for

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 7
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

the quarter ended March 31, 2011 were $112.9 million compared to $57.6 million for the three months ended March 31, 2010.

As of March 31, 2011, Dendreon had approximately $779.0 million in cash, cash equivalents, and short-term and long-term investments compared to $277.3 million as of December 31, 2010.

**Recent Highlights:**

- In addition to the $28.1 million in revenue in the first quarter, sales of PROVENGE® (sipuleucel-T) in April 2011 were approximately $15 million, reflecting increasing demand and increasing utilization of its newly approved capacity. Dendreon continues to expect revenue this year of between $350-400 million with approximately half of that anticipated in the fourth quarter.

- The number of accounts infusing PROVENGE as of March 31, 2011 increased from approximately 50 to approximately 135 and we are on track to meet our goal of 225 sites infusing PROVENGE by the end of Q2.

- The U.S. Food and Drug Administration (FDA) approved the expanded New Jersey manufacturing facility. The 36 additional workstations will come online in a staged approach.

- Dendreon filed for FDA approval of the Los Angeles area manufacturing facility and has an action date of June 30, 2011.

- Dendreon filed for FDA approval of the Atlanta facility on April 28 and expects a decision in late August or early September.

- The Centers for Medicare and Medicaid Services (CMS) issued a proposed decision memo supporting the on-label coverage of PROVENGE.

- Dendreon selected a contract manufacturing organization in Europe and a location for a manufacturing facility outside Frankfurt, Germany.

24. Again, seeking to further condition investors to believe that PROVENGE was being accepted by the medical community, according to plan, in addition to the foregoing, defendant Gold was quoted in the May 2, 2011 release, as follows:

> "We are proud of our accomplishments as we continue to expand the launch of PROVENGE. Our recent increased sales and marketing efforts have had an impact, and we will continue to build on this momentum as we bring additional capacity online

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS - 8
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

throughout this year to make PROVENGE more broadly available," said Mitchell H. Gold, M.D., president and chief executive officer.

25.    As shares of the Company continued to trade at artificially inflated levels, also on May 2, 2011, defendants filed with the SEC the Company's 1Q:11 Form 10-Q, for the quarter ended March 31, 2011, signed by defendants Gold, Schiffman and Bishop and certified by defendants Gold and Schiffman.  In addition to making substantially similar statements concerning the Company operations, including expenses and costs, as had been published previously, the 1Q:11 Form 10-Q also provided statements which attested to the purported effectiveness and sufficiency of its controls and procedures, as follows:

**ITEM 4.   CONTROLS AND PROCEDURES**

(a)    Disclosure controls and procedures.

Our chief executive officer and our chief financial officer, based on their evaluation of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q, have concluded that our disclosure controls and procedures are effective for ensuring that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms.

(b)    Changes in internal control over financial reporting.

There were no changes in our internal control over financial reporting during the quarter ended March 31, 2011 that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

26.    In addition to the foregoing, the Company's 1Q:11 Form 10-Q also contained certifications by defendants Gold and Schiffman, that attested to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

1.    I have reviewed this quarterly report on Form 10-Q of Dendreon Corporation;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 9
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

        a.      Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

        b.      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

        c.      Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

        d.      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

        a.      All significant deficiencies and material weaknesses in the design or operation of internal control over financial

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 10
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

      b.    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

/s/ Mitchell H. Gold, M.D.
President and Chief Executive Officer

Date: May 2, 2011

                    \*    \*    \*

/s/ Gregory T. Schiffman
Executive Vice President, Chief Financial Officer and Treasurer (Principal Financial Officer)

Date: May 2, 2011

### CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the quarterly report of Dendreon Corporation (the "Company") on Form 10-Q for the quarter ended March 31, 2011, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), each of the undersigned officers of the Company certifies, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to such officer's knowledge:

(1)    The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)    The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company as of the dates and for the periods expressed in the Report.

Name:        /s/ Mitchell H. Gold, M.D.

Title:         President and Chief Executive Officer

Name:        /s/ Gregory T. Schiffman



1

Title:  Executive Vice President, Chief Financial Officer
and Treasurer (Principal Financial Officer)

2

Date: May 2, 2011

3

27. Again, on June 30, 2011, defendants published another release that was designed

4

to condition investors to believe that the Company was successfully rolling out its chief product

5

PROVENGE.  This release stated, in part, the following:

6

7
Dendreon Announces Increased Capacity and Significant
Reimbursement Decisions Supporting Broad Availability of
PROVENGE

8

9
- FDA Approves Los Angeles Immunotherapy Manufacturing
Facility, CMS Announces National Coverage Decision, and
Product Specific Q-Code Effective -

10

11

12

13
SEATTLE, June 30, 2011 /PRNewswire/ -- Dendreon Corporation
(Nasdaq: DNDN) today announced significant milestones that
support broad availability for on-label use of PROVENGE®
(sipuleucel-T), the first autologous cellular immunotherapy for the
treatment of asymptomatic or minimally symptomatic metastatic
castrate resistant (hormone refractory) prostate cancer (mCRPC).

14

15
The U.S. Food and Drug Administration (FDA) approved the Los
Angeles immunotherapy manufacturing facility on June 29, 2011.
The facility includes 36 workstations, and Dendreon will bring
these on in a staged approach.

16

17

18

19

20

21

22
In addition, the Centers for Medicare and Medicaid Services
(CMS) issued a final National Coverage Decision (NCD) for
PROVENGE on June 30, 2011, requiring Medicare contractors to
cover the use of PROVENGE for treatment of asymptomatic or
minimally symptomatic metastatic castrate resistant (hormone
refractory) prostate cancer. The NCD will standardize coverage
processes across the country for all Medicare patients with
asymptomatic or minimally symptomatic metastatic castrate
resistant (hormone refractory) prostate cancer and provides the
local Medicare Administrative Contractors (MACs) specific
criteria, consistent with the label, on how PROVENGE should be
covered.

23

24
PROVENGE was issued a product specific Q-code effective
July 1, 2011, which allows for electronic submission of claims and
is expected to accelerate time to payment for physicians.

25

26
As part of this expanded access, Dendreon supports programs to
provide comprehensive assistance for eligible patients seeking
access to treatment with PROVENGE, including through grants to

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 12
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

independent foundations and establishment of a patient assistance program for uninsured patients. Dendreon provides grants to independently run foundations providing qualifying patients with financial assistance for co-pays, co-insurance, and treatment-related travel costs.

28. Defendant Gold again used the June 30, 2011, release to further condition investors to believe that PROVENGE was being accepted by the medical community, according to plan, by stating the following:

"These significant achievements support broad access to PROVENGE, the foundation of care for men with asymptomatic or minimally symptomatic metastatic castrate resistant prostate cancer," said Mitchell H. Gold, M.D., president and chief executive officer of Dendreon. "The increased capacity and positive National Coverage Decision by CMS in conjunction with the patient assistance programs will ensure patients who may benefit from treatment with PROVENGE have increased access to it."

29. The statements contained in Dendreon's January 7, 2011, March 10, 2011, May 2, 2011, and its June 30, 2011, releases and those statements contained in the Company's 1Q:11 Form 10-Q, referenced above, were each materially false and misleading when made, and were known by defendants to be false or were deliberately disregarded as such thereby, for the following reasons, among others:

(a)     At all times during the Class Period, it was not true that the Company was finding success introducing its new PROVENGE cancer drug according to plan, and defendants knew or deliberately disregarded that as soon as they attempted to sell this $93,000 treatment that was found to extend a patient's life by only approximately 4 months, that physicians were not adopting the drug over concerns of insurance reimbursement and over concerns that the drug was extremely expensive, relative to its results;

(b)     At all times during the Class Period, defendants knew or deliberately disregarded that the forecasts based on physicians' immediate adoption of PROVENGE were dramatically inflated because the Company had not provided physicians with options to finance

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 13
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

these expensive treatments and had not properly educated physicians on either the value of this drug or physicians' ability to be reimbursed for its extreme costs;

(c)     Throughout the Class Period, it was also not true that Dendreon contained adequate systems of internal operational or financial controls, such that Dendreon's reported financial statements were true, accurate or reliable; and

(d)     As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim that Dendreon was operating according to plan, or that Dendreon could achieve guidance sponsored and/or endorsed by defendants.

**B.     The True Financial and Operational Condition of Dendreon is Belated Disclosed**

30.     On August 3, 2011, after the close of trading, defendants shocked investors after Dendreon issued a release which announced financial and operational results, well below analysts' expectations – and significantly lowered guidance for 2011.  Following the publication of this release, shares of the Company declined over 60%, or over $22.00 per share, to reach a multi-year low of $13.39 per share when trading opened on August 4, 2011.

31.     Immediately after investors incurred these massive losses, *Bloomberg* reported, in part, the following:

> Dendreon Scraps Sales Forecast on Slow Prostate Drug Sales; Shares Plunge
>
> Dendreon Corp. (DNDN) withdrew its sales estimates for 2011, saying the use of the prostate cancer drug Provenge isn't growing as fast as anticipated. Shares plunged more than 60 percent in extended trading.
>
> Dendreon, based in Seattle, previously estimated revenue of $350 million to $400 million during the year. The company still believes the market size for Provenge is substantial, though it expects modest increases in sales each quarter for the remainder of the year, Chief Executive Officer Mitchell Gold said today in a statement.
>
> The main stumbling block for Provenge use is the lack of knowledge about insurance coverage, Gold said. The Centers for

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 14
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  466442 V1

Medicare & Medicaid Services issued a final ruling in June saying the $93,000 treatment is "reasonable and necessary" for men with advanced, prostate tumors resistant to hormone therapy who have minimal or no symptoms.

\*   \*   \*

Dendreon dropped $21.92, or 61 percent, to $13.92 at 6:35 p.m. New York time in extended trading on the Nasdaq Stock Market after gaining 2.5 percent to close at $35.84 before the company's announcement. Shares had gained 2.6 percent this year.

New Production

Provenge, the first approved therapy that trains the body's immune system to attack cancer cells as if they were a virus, generated $48 million last year. Analysts surveyed by Bloomberg forecast revenue hitting $370 million this year if the company boosts its capacity by expanding the New Jersey plant and adding new manufacturing sites in Los Angeles and Atlanta.

Instead, the company will reduce its expenses and eliminate positions to meet the lower demand for the product, Gold said. The company didn't specify how many jobs would be lost.

Dendreon reported a second-quarter loss of 79 cents per share, greater than the 71 cents average estimate of 20 analysts surveyed by Bloomberg. Sales of Provenge were $49.6 million, short of the $57.7 million analysts expected.

Falling short on earnings was disappointing and pulling the forecast for the entire year is worse, said Christopher Raymond, an analyst at Robert W. Baird in Chicago, in a note to investors today. The previous estimate assumed sales of Provenge would double in the third and fourth quarters, he said.

"Depending on the definition of 'modest,' this new guidance could infer revenue of under $200 million for fiscal year 2011," he wrote.

32.    In addition to the foregoing, *Reuters* also reported, in part, the following:

Dendreon pulls forecast as Provenge falls short

\*    Q2 EPS loss $0.79 vs Street view loss $0.71

\*    Revenue $49.6 million

\*    Withdraws full-year forecast; sees only modest growth

\*    Shares fall 62 percent

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 15
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

NEW YORK, Aug 3 (Reuters) - Dendreon Corp (DNDN) on Wednesday reported far lower-than-expected second-quarter sales of the prostate cancer vaccine Provenge and withdrew its full-year revenue forecast, sending its shares into a tailspin.

\*   \*   \*

"There's something wrong here and I don't think anyone really knows exactly what it is," said Cowen and Co analyst Eric Schmidt.

"They didn't post second quarter sales near where we would have hoped and guided down and admitted there's little visibility about where this drug is going over the next several quarters," Schmidt said. "I'd expect the stock to be down sharply when it opens tomorrow."

Dendreon said clarity over reimbursement for the drug that costs about $93,000 for a three-infusion course of treatment and physician comfort with the vaccine "will take time."

"For the remainder of 2011, the launch trajectory will reflect a more gradual adoption of Provenge," Chief Executive Mitchell Gold said in a statement.

The company had previously cited manufacturing constraints for holding back Provenge sales, but was now pointing to "reimbursement headwinds."

The majority of physicians are unaware of a recent positive national reimbursement ruling for Medicare patients, Gold told analysts on a conference call, adding that educating doctors will be a top priority for the sales force.

He said community urologists and oncologists are much more concerned about making certain they will get paid than those at academic medical centers, which represented the vast majority of early prescribers.

33.     Similarly, *The Wall Street Journal* also reported on the Dendreon stock collapse, stating in part, the following:

Setback for Dendreon Cancer Drug

\*   \*   \*

Chief Executive Mitchell Gold said Wednesday that the launch of the drug will have a "more gradual trajectory" than previously expected because of "reimbursement knowledge" related to the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 16
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  466442 V1

drug. That means that the process of getting reimbursed is difficult enough for doctors that it is discouraging use of the treatment.

Until now, the company had been working to increase its manufacturing capacity in order to meet U.S. patient demand. As recently as May, Dendreon projected full year revenue of $350 million to $400 million, but now sees only "modest" sequential quarterly growth above its second-quarter revenue of $49.6 million.

34.     The market for Dendreon's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Dendreon securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Dendreon securities based upon the integrity of the market price of Dendreon common stock and market information relating to Dendreon, and have been damaged thereby.

35.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Dendreon securities by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

36.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Dendreon's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Dendreon and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 17
Case No.

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   members of the Class purchasing the Company's common stock at artificially inflated prices,

2   thus causing the damages complained of herein.

## VI.    CAUSATION AND ECONOMIC LOSS

4           37.    During the Class Period, as detailed herein, defendants engaged in a scheme to

5   deceive the market, and a course of conduct that artificially inflated the price of Dendreon's

6   securities and operated as a fraud or deceit on Class Period purchasers of Dendreon's securities

7   by misrepresenting the Company's financial results.  Over a period of several months,

8   defendants improperly inflated the Company's financial results.  Ultimately, however, when

9   defendants' prior misrepresentations and fraudulent conduct came to be revealed and was

10  apparent to investors, Dendreon's securities declined precipitously – evidence that the prior

11  artificial inflation in the price of Dendreon's securities was eradicated.  As a result of their

12  purchases of Dendreon securities during the Class Period, plaintiff and other members of the

13  Class suffered economic losses, *i.e.* damages under the federal securities laws.

14          38.    By improperly characterizing the Company's ability to successfully roll out its

15  new drug and by deliberately disregarding the fact that doctors were not and would not proscribe

16  the Company's $93,000 drug without a defined reimbursement protocol, defendants presented a

17  misleading image of Dendreon's business and future growth prospects.  During the Class Period,

18  defendants repeatedly emphasized the ability of the Company to expand the sales growth of

19  Provenge, and consistently reported sales growth and doctors' acceptance of this drug,  within

20  the range of guidance sponsored or endorsed by the Company.  These claims caused and

21  maintained the artificial inflation in the price of Dendreon's securities throughout the Class

22  Period and until the truth about the Company was ultimately revealed to investors.

23          39.    As a direct result of defendants' statements on August 3, 2011, which indicated

24  that the Company would be forced to radically revise its financial guidance, Dendreon shares

25  declined over 60% on August 4, 2011 compared to the closing price of Dendreon shares from the

26  previous day, before news of Dendreon's illegal and improper scheme reached the market.  This

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 18
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   dramatic share price decline, eliminated much of the artificial inflation from Dendreon's share

2   price, causing real economic loss to investors who purchased this stock during the Class Period.

3      40.  The decline in the price of Dendreon securities at the end of the Class Period was

4   a direct result of the nature and extent of defendants' fraud being revealed to investors and to the

5   market.  The timing and magnitude of Dendreon's stock price decline negates any inference that

6   the losses suffered by plaintiff and the other members of the Class was caused by changed

7   market conditions, macroeconomic or industry factors or even Company-specific facts unrelated

8   to defendants' fraudulent conduct.  During the same period in which Dendreon's share price fell

9   over  60% as a result of defendants' fraud being revealed, the Standard & Poor's 500 securities

10   index was relatively unchanged.

11      41.  The economic loss, *i.e.* damages suffered by plaintiff and other members of the

12   Class, was a direct result of defendants' fraudulent scheme to artificially inflate the price of

13   Dendreon securities and the subsequent significant decline in the value of the Company's

14   securities when defendants' prior misstatements and other fraudulent conduct was revealed.

**VII. ADDITIONAL SCIENTER ALLEGATIONS**

16      42.  As alleged herein, defendants acted with scienter in that each defendant knew that

17   the public documents and statements issued or disseminated in the name of the Company were

18   materially false and misleading; knew that such statements or documents would be issued or

19   disseminated to the investing public; and knowingly and substantially participated or acquiesced

20   in the issuance or dissemination of such statements or documents as primary violations of the

21   federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their

22   receipt of information reflecting the true facts regarding Dendreon, their control over, and/or

23   receipt and/or modification of Dendreon's allegedly materially misleading misstatements and/or

24   their associations with the Company which made them privy to confidential proprietary

25   information concerning Dendreon, participated in the fraudulent scheme alleged herein.

26

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 19
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

43.     Defendants were motivated to materially misrepresent to the SEC and investors the true financial condition of the Company because their scheme and illegal course of conduct: (i) deceived the investing public regarding Dendreon's business, operations, management and the intrinsic value of Dendreon common stock; (ii) enabled defendants to artificially inflate the price of Dendreon securities; (iii) enabled defendants to sell $540 million of convertible senior notes in a public offering on January 14, 2011; (iv) enabled Dendreon insiders to sell millions of dollars of their privately held Dendreon shares while in possession of material adverse non-public information about the Company; and (v) caused plaintiff and other members of the Class to purchase Dendreon securities at artificially inflated prices.  The insider stock sales which occurred within the Class Period are set forth below:

**Insider Transactions Reported – During the Class Period**

| Date | Insider | Shares | Sale / Disposition | Value |
|------|---------|--------|--------------------|-------|
| Jul 31, 2011 | RANIERI RICHARD J<br>Officer | 796 | $36.90 per share. | 29,372 |
| Jul 29, 2011 | BISHOP HANS EDGAR<br>Officer | 2,291 | $37.65 per share. | 86,256 |
| Jul 25, 2011 | GOLD MITCHELL<br>Officer | 19,000 | $38.37 per share. | 729,030 |
| Jul 21, 2011 | COX GREG<br>Officer | 126 | $39.02 per share. | 4,916 |
| Jul 21, 2011 | FROHLICH MARK W<br>Officer | 3,230 | $39.13 per share. | 126,389 |
| Jul 21, 2011 | SCHIFFMAN GREGORY<br>Officer | 427 | $39.13 per share. | 16,708 |
| Jul 21, 2011 | URDAL DAVID<br>Officer | 1,015 | $38.75 per share. | 39,331 |
| Jul 21, 2011 | GOLD MITCHELL<br>Officer | 1,281 | $39.13 per share. | 50,125 |
| Jul 17, 2011 | COX GREG<br>Officer | 95 | $38.45 per share. | 3,652 |
| Jul 17, 2011 | SCHIFFMAN GREGORY<br>Officer | 741 | $38.80 per share. | 28,750 |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 20
Case No.



| | | | | |
|---|---|---|---|---|
| Jul 17, 2011 | URDAL DAVID<br>Officer | 2,035 | $38.43 per share. | 78,205 |
| Jul 17, 2011 | GOLD MITCHELL<br>Officer | 2,122 | $38.80 per share. | 82,333 |
| Jul 15, 2011 | COX GREG<br>Officer | 254 | $38.43 per share. | 9,761 |
| Jul 15, 2011 | SCHIFFMAN GREGORY<br>Officer | 1,936 | $38.80 per share. | 75,116 |
| Jul 15, 2011 | URDAL DAVID<br>Officer | 5,312 | $39.19 per share. | 208,177 |
| Jul 15, 2011 | GOLD MITCHELL<br>Officer | 3,986 | $38.80 per share. | 154,656 |
| Jun 27, 2011 | GOLD MITCHELL<br>Officer | 19,000 | $38.69 per share. | 735,110 |
| Jun 3, 2011 | CANET GERARDO<br>Director | 5,000 | $41.38 per share. | 206,900 |
| May 26, 2011 | RANIERI RICHARD J<br>Officer | 6,371 | $41.00 per share. | 261,211 |
| May 25, 2011 | COX GREG<br>Officer | 20,000 | $40.70 per share. | 814,000 |
| May 25, 2011 | GOLD MITCHELL<br>Officer | 19,000 | $40.00 per share. | 760,000 |
| May 23, 2011 | HAMM RICHARD F JR<br>Officer | 51,457 | $39.08 per share. | 2,010,939 |
| May 6, 2011 | HAMM RICHARD F JR<br>Officer | 9,113 | $39.18 per share. | 357,047 |
| May 3, 2011 | FROHLICH MARK W<br>Officer | 18,000 | $40.63 per share. | 731,340 |
| Apr 30, 2011 | RANIERI RICHARD J<br>Officer | 2,379 | $42.27 per share. | 100,560 |
| Apr 29, 2011 | BISHOP HANS EDGAR<br>Officer | 2,342 | $42.27 per share. | 98,996 |
| Apr 25, 2011 | GOLD MITCHELL<br>Officer | 19,000 | $40.71 per share. | 773,490 |
| Apr 21, 2011 | COX GREG<br>Officer | 126 | $40.98 per share. | 5,163 |
| Apr 21, 2011 | FROHLICH MARK W<br>Officer | 3,230 | $40.48 per share. | 130,750 |
| Apr 21, 2011 | SCHIFFMAN GREGORY<br>Officer | 309 | $40.89 per share. | 12,635 |
| Apr 21, 2011 | URDAL DAVID<br>Officer | 1,016 | $41.04 per share. | 41,696 |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 21
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

| Apr 21, 2011 | GOLD MITCHELL<br>Officer | 1,281 | $40.89 per share. | 52,380 |
| Apr 21, 2011 | HAMM RICHARD F JR<br>Officer | 309 | $40.89 per share. | 12,635 |
| Apr 19, 2011 | COX GREG<br>Officer | 96 | $42.01 per share. | 4,032 |
| Apr 18, 2011 | URDAL DAVID<br>Officer | 2,035 | $41.68 per share. | 84,818 |
| Apr 18, 2011 | COX GREG<br>Officer | 256 | $41.68 per share. | 10,670 |
| Apr 17, 2011 | HAMM RICHARD F JR<br>Officer | 538 | $42.40 per share. | 22,811 |
| Apr 17, 2011 | GOLD MITCHELL<br>Officer | 2,122 | $42.40 per share. | 89,972 |
| Apr 17, 2011 | SCHIFFMAN GREGORY<br>Officer | 538 | $42.40 per share. | 22,811 |
| Apr 15, 2011 | HAMM RICHARD F JR<br>Officer | 1,405 | $42.40 per share. | 59,572 |
| Apr 15, 2011 | GOLD MITCHELL<br>Officer | 3,986 | $42.40 per share. | 169,006 |
| Apr 15, 2011 | URDAL DAVID<br>Officer | 14,211 | $41.58 - $42.12<br>per share. | 595,000 |
| Apr 14, 2011 | FROHLICH MARK W<br>Officer | 4,282 | $40.00 per share. | 171,280 |
| Mar 29, 2011 | URDAL DAVID<br>Officer | 85,716 | $35.00 per share. | 3,000,060 |
| Mar 25, 2011 | GOLD MITCHELL<br>Officer | 19,000 | $33.21 per share. | 630,990 |
| Mar 11, 2011 | DZIURZYNSKI BOGDAN<br>Director | 33,000 | $32.93 per share. | 1,086,690 |
| Mar 3, 2011 | GOLD MITCHELL<br>Officer | 19,000 | $33.03 per share. | 627,505 |
| Jan 21, 2011 | FROHLICH MARK W<br>Officer | 2,250 | $35.27 per share | 79,347 |
| Jan 18, 2011 | FROHLICH MARK W<br>Officer | 2,855 | $36.78 per share | $105,018 |

## VIII.   APPLICABILITY OF PRESUMPTION OF RELIANCE:<br>FRAUD-ON-THE-MARKET DOCTRINE

44.    At all relevant times, the market for Dendreon's common stock was an efficient market for the following reasons, among others:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 22
Case No.



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101<br>(206) 623-7292 • FAX (206) 623-0594

(a) Dendreon's stock met the requirements for listing, and was listed and actively traded on the NASDAQ national market exchange, a highly efficient and automated market;

(b) As a regulated issuer, Dendreon filed periodic public reports with the SEC and the NASDAQ;

(c) Dendreon regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Dendreon was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

45. As a result of the foregoing, the market for Dendreon securities promptly digested current information regarding Dendreon from all publicly available sources and reflected such information in the price of Dendreon securities. Under these circumstances, all purchasers of Dendreon securities during the Class Period suffered similar injury through their purchase of each of Dendreon securities at artificially inflated prices and a presumption of reliance applies.

## IX.   NO SAFE HARBOR

46. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 23
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  466442 V1

extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Dendreon who knew that those statements were false when made.

## X.  BASIS OF ALLEGATIONS

47.  Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of SEC filings by Dendreon, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **FIRST CLAIM**

### VIOLATION OF SECTION 10(B) OF
### THE EXCHANGE ACT AND RULE 10B-5
### PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

48.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.  During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did:  (i) deceive the investing public regarding Dendreon's business, operations, management and the intrinsic value of Dendreon securities; (ii) enable defendants to artificially inflate the price of Dendreon securities; (iii) enable Dendreon insiders to sell millions of dollars of their privately held Dendreon shares while in possession of material adverse non-public information about the Company; and (iv) cause plaintiff and other members of the Class to purchase Dendreon securities at artificially

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 24
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  466442 V1

1 | inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants,

2 | jointly and individually (and each of them) took the actions set forth herein.

3 | 50. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made

4 | untrue statements of material fact and/or omitted to state material facts necessary to make the

5 | statements not misleading; and (c) engaged in acts, practices, and a course of business which

6 | operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort

7 | to maintain artificially high market prices for Dendreon's securities in violation of Section 10(b)

8 | of the Exchange Act and Rule 10b-5.  All defendants are sued either as primary participants in

9 | the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

10 | 51. Defendants, individually and in concert, directly and indirectly, by the use, means

11 | or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

12 | continuous course of conduct to conceal adverse material information about the business,

13 | operations and future prospects of Dendreon as specified herein.

14 | 52. These defendants employed devices, schemes and artifices to defraud, while in

15 | possession of material adverse non-public information and engaged in acts, practices, and a

16 | course of conduct as alleged herein in an effort to assure investors of Dendreon's value and

17 | performance and continued substantial growth, which included the making of, or the

18 | participation in the making of, untrue statements of material facts and omitting to state material

19 | facts necessary in order to make the statements made about Dendreon and its business operations

20 | and future prospects in the light of the circumstances under which they were made, not

21 | misleading, as set forth more particularly herein, and engaged in transactions, practices and a

22 | course of business which operated as a fraud and deceit upon the purchasers of Dendreon

23 | common stock during the Class Period.

24 | 53. Each of the Individual Defendants' primary liability, and controlling person

25 | liability, arises from the following facts:  (i) the Individual Defendants were high-level

26 | executives and/or directors at the Company during the Class Period and members of the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 25
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  466442 V1

1  Company's management team or had control thereof; (ii) each of these defendants, by virtue of

2  his responsibilities and activities as a senior officer and/or director of the Company was privy to

3  and participated in the creation, development and reporting of the Company's internal budgets,

4  plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal

5  contact and familiarity with the other defendants and was advised of and had access to other

6  members of the Company's management team, internal reports and other data and information

7  about the Company's finances, operations, and sales at all relevant times; and (iv) each of these

8  defendants was aware of the Company's dissemination of information to the investing public

9  which they knew or deliberately disregarded was materially false and misleading.

10       54.     The defendants had actual knowledge of the misrepresentations and omissions of

11  material facts set forth herein, or acted with deliberate disregard for the truth in that they failed to

12  ascertain and to disclose such facts.  Such defendants' material misrepresentations and/or

13  omissions were done knowingly or with deliberately for the purpose and effect of concealing

14  Dendreon's operating condition and future business prospects from the investing public and

15  supporting the artificially inflated price of its common stock.  As demonstrated by defendants'

16  overstatements and misstatements of the Company's business, operations and earnings

17  throughout the Class Period, defendants, if they did not have actual knowledge of the

18  misrepresentations and omissions alleged, were deliberate in failing to obtain such knowledge by

19  deliberately refraining from taking those steps necessary to discover whether those statements

20  were false or misleading.

21       55.     As a result of the dissemination of the materially false and misleading information

22  and failure to disclose material facts, as set forth above, the market price of Dendreon securities

23  was artificially inflated during the Class Period.  In ignorance of the fact that market prices of

24  Dendreon's securities were artificially inflated, and relying directly or indirectly on the false and

25  misleading statements made by defendants, or upon the integrity of the market in which the

26  shares trade, and/or on the absence of material adverse information that was known to or

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 26
Case No.



1    deliberately disregarded by defendants but not disclosed in public statements by defendants

2    during the Class Period, plaintiff and the other members of the Class acquired Dendreon

3    securities during the Class Period at artificially high prices and were damaged thereby.

4        56.      At the time of said misrepresentations and omissions, plaintiff and other members

5    of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the

6    other members of the Class and the marketplace known the truth regarding the problems that

7    Dendreon was experiencing, which were not disclosed by defendants, plaintiff and other

8    members of the Class would not have purchased or otherwise acquired their Dendreon securities,

9    or, if they had acquired such securities during the Class Period, they would not have done so at

10    the artificially inflated prices which they paid.

11        57.      By virtue of the foregoing, defendants have violated Section 10(b) of the

12    Exchange Act, and Rule 10b-5 promulgated thereunder.

13        58.      As a direct and proximate result of defendants' wrongful conduct, plaintiff and

14    the other members of the Class suffered damages in connection with their respective purchases

15    and sales of the Company's securities during the Class Period.

16                                 **SECOND CLAIM**
                          **VIOLATION OF SECTION 20(A) OF**

17        **THE EXCHANGE ACT AGAINST INDIVIDUAL DEFENDANTS**

18        59.      Plaintiff repeats and realleges each and every allegation contained above as if

19    fully set forth herein.

20        60.      The Individual Defendants acted as controlling persons of Dendreon within the

21    meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level

22    positions, and their ownership and contractual rights, participation in and/or awareness of the

23    Company's operations and/or intimate knowledge of the false financial statements filed by the

24    Company with the SEC and disseminated to the investing public, the Individual Defendants had

25    the power to influence and control and did influence and control, directly or indirectly, the

26    decision-making of the Company, including the content and dissemination of the various



000700-00 466442 V1

statements which plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.     As set forth above, Dendreon and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 28
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  466442 V1

1    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity

2 and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and any

3 appropriate state law remedies to assure that the Class has an effective remedy; and

4    Such other and further relief as the Court may deem just and proper.

5                              **JURY TRIAL DEMANDED**

6    Plaintiff hereby demands a trial by jury.

7 Dated: August 4, 2011                 HAGENS BERMAN SOBOL SHAPIRO LLP

8                                       By ____/s/ Steve W. Berman_____
                                           Steve W. Berman, WSBA# 12536
9                                          Karl P. Barth, WSBA# 22780
                                        1918 Eighth Avenue, Suite 3300
10                                      Seattle, Washington  98101
                                        Telephone:  (206) 623-7292
11                                      Facsimile:  (206) 623-0594
                                        Email: steve@hbsslaw.com
12                                             karlb@hbsslaw.com

13                                      HAGENS BERMAN SOBOL SHAPIRO LLP
                                        Reed R. Kathrein
14                                      Peter Borkon
                                        715 Hearst Avenue, Suite 202
15                                      Berkeley, California  94710
                                        Telephone:  (510) 725-3000
16                                      Facsimile:  (510) 725-3001
                                        Email: reed@hbsslaw.com
17                                             peterb@hbsslaw.com

18                                      KIM MILLER
                                        KAHN SWICK & FOTI, LLC
19                                      500 Fifth Avenue, Ste. 1810
                                        New York, NY 10110
20                                      Telephone: (212) 696-3730
                                        Facsimile: (504) 455-1498
21                                      Email: kim.miller@ksfcounsel.com

22                                      LEWIS KAHN
                                        KAHN SWICK & FOTI, LLC
23                                      206 Covington Street
                                        Madisonville, Louisiana 70447
24                                      Telephone: (504) 455-1400
                                        Facsimile: (504) 455-1498
25                                      Email: lewis.kahn@ksfcounsel.com

26                                      Attorneys for Plaintiff

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS  - 29
Case No.



000700-00  466442 V1

## CERTIFICATION PURSUANT TO SECURITIES LAWS

AMIT. A. FRIAS _____ (name) ("Plaintiff") declares, as to the claims asserted under the federal securities law, that:

1. Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and retains the firm of Kahn Swick and Foti, LLC, to pursue such action on a contingent fee basis.

2. Plaintiff did not purchase securities of Dendreon Corporation at the direction of counsel or in order to participate in a private action under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the Class Period, Plaintiff has executed transactions in the securities of Dendreon Corporation as follows. See attached Schedule.

5. In the last three years, Plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6. Plaintiff will not accept payment for serving as a lead plaintiff beyond his/her/its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 08-04 _____, 2011

Plaintiff Signature

AMIT. A. FRIAS

Printed Name

Name of Plaintiff: ___ AMIT. A . FRIAS .

Schedule of Plaintiff's Transaction(s) in: Dendreon Corporation

Purchase(s):

| Date | Units | Price |
|------|-------|-------|
| 08/01/2011 | 200 | 36.0999 |
| 08/01/2011 | 800 | 36.11 |