The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMIT FRIAS, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> v.<br><br>DENDREON CORPORATION, MITCHELL H. GOLD, GREGORY T. SCHIFFMAN, and HANS E. BISHOP,<br><br>      Defendants. | NO. 11-cv-01291 JLR<br><br>CLASS ACTION<br><br>MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL<br><br>**NOTE ON MOTION CALENDAR: OCTOBER 21, 2011**<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

Discovery Capital Management, LLC ("DCM") respectfully requests that this Court grant its Motion for an Order appointing it as Lead Plaintiff on behalf of itself and all others similarly situated who purchased or otherwise acquired the common stock of Dendreon Corporation ("Dendreon," or the "Company") between April 29, 2010, and August 3, 2011, inclusive (the "Class Period"), pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B).

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL
PAGE – 1

12852 00101 nj031e3364

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

1   In addition, DCM respectfully requests that it appoint Gardy & Notis, LLP as Lead

2   Counsel for the Class and Skellenger Bender, P.S. as Liaison Counsel.

3       DCM, an institutional investor, is a member of the putative class and suffered losses in

4   excess of approximately $656,785[1] as a result of its investments in the securities of Dendreon.

5   DCM has incurred the largest loss of any other moving party, and as such, has the largest

6   financial interest in the outcome of this litigation, and satisfies the requirements to qualify as

7   the "most adequate plaintiff" as defined by the PSLRA.  DCM also satisfies the requirements

8   of Fed. R. Civ. P. 23(a), as its claims are typical of the other members of the putative class,

9   and it will fairly and adequately represent the class.  In addition, DCM has selected a law firm

10  with substantial experience in prosecuting securities class actions to serve as Lead Counsel for

11  the class.

12                          **STATEMENT OF FACTS**

13      This is a federal class action on behalf of purchasers of the securities of Dendreon

14  during the Class Period, seeking to pursue remedies under the Exchange Act.  The action

15  asserts claims against Dendreon and certain of its officers and directors[2] under Sections 10(b)

16  and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated

17  thereunder, 17 C.F.R. §240.10b-5.

18      Dendreon is a biotechnology company that engages in the discovery, development,

19  and commercialization of therapeutics to enhance the treatment of cancer.  The Company

20  offers active cellular immunotherapy and small molecule product candidates to treat various

21  cancers.  The Company's principal product is PROVENGE (sipuleucel-T), an active cellular

22  immunotherapy for the treatment of metastatic, castrate-resistant prostate cancer.

23

24      [1]   *See* Declaration of Jeffrey Grant in Support of the Motion of DCM for Appointment as Lead
        Plaintiff and Approval of Selection of Lead Counsel (the "Grant Decl."), Ex. A (Sworn certification of
25      Thomas P. Zucosky on behalf of DCM).

26      [2]   The named executives and officers of Dendreon are: Chief Executive Officer, Mitchell H.
        Gold ("Gold") and Chief Financial Officer Gregory T. Schiffman ("Schiffman"). Dendreon, Gold and
        Schiffman are referred to herein as "Defendants."

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR
APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD
PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL
PAGE – 2

**skellenger**bender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

1    On April 29, 2010 (the first day of the Class Period) Defendants issued a press release

2  and filed Form 8-K stating that the Company had successfully obtained the approval of the

3  United States Food and Drug Administration for its chief product, PROVENGE, and was

4  poised for significant growth.  Throughout the Class Period, Defendants continued to tell

5  investors that Dendreon was successfully implementing the launch of its chief product

6  PROVENGE and that PROVENGE was being accepted by the medical community.

7  However, as was finally disclosed on August 3, 2011, the Company was not finding success

8  introducing its new PROVENGE cancer drug despite their representations to the contrary.

9  Rather, Defendants knew or deliberately disregarded that as soon as they attempted to sell this

10  $93,000 treatment that was found to extend a patient's life by only approximately four

11  months, that physicians were not adopting the drug over concerns of insurance reimbursement

12  and over concerns that the drug was extremely expensive, relative to its results.

13    On August 3, 2011, after the close of trading, Defendants shocked investors by

14  issuing a press release in which Dendreon announced financial and operational results that

15  were well below analysts' expectations and that Dendreon was significantly lowering its

16  guidance for 2011.  Following the publication of this release, shares of the Company declined

17  over 60%, or over $22.00 per share, to reach a multi-year low of $12.73 per share when

18  trading opened on August 4, 2011.

19    As a result of these materially false and misleading statements and failures to disclose,

20  Dendreon common stock traded at artificially inflated prices during the Class Period.  Plaintiff

21  and other members of the Class purchased or otherwise acquired Dendreon common stock

22  relying upon the integrity of the market price of Dendreon common stock and market

23  information relating to Dendreon, and have been damaged thereby.

24                                    **STATEMENT OF ISSUES**

25    Whether DCM should be appointed Lead Plaintiff?

26    Whether DCM's choice should be appointed Lead Counsel and Liaison Counsel?

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR
APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD
PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL
PAGE – 3

12852 00101 nj031e3364



1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

**EVIDENCE RELIED UPON**

Declaration of Jeffrey Grant (together with the attached Exhibits A, B, and C)

**AUTHORITY**

I.    **DCM Should Be Appointed Lead Plaintiff Because It Is the Presumptively Most Adequate Plaintiff**

A.    **The Legal Requirements under the PSLRA**

The PSLRA establishes a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1).

First, the Plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A).  Here, the first action was filed on August 4, 2011, and plaintiff's counsel in that action published a press release announcing the filing and notifying class members of their right to move the Court to serve as lead plaintiff no later than 60 days thereafter.

Second, within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  15 U.S.C. § 78u-4(a)(3)(A).  Next, within 90 days after publication of the initial notice of pendency, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members 15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa)    has either filed the complaint or made a motion in response to a notice
> . . .

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL PAGE – 4

12852 00101 nj031e3364

skellenger**bender**

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see See Armour v. Network Assocs. Inc.,* 171 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001); *see also In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).

### B.    DCM Has Complied With the PSLRA

The time period in which class members may move to be appointed lead plaintiff in this case, under 15 U.S.C. § 78u-4(a)(3)(A), expires on October 3, 2011.  DCM's application, filed on October 3, 2011, is thus timely.  DCM has also reviewed the complaints against Dendreon and is willing to serve as a representative party on behalf of the Class.  *See* Grant Decl. Ex. A.  In addition, DCM has selected and retained competent counsel to represent it and the Class.  *See* Grant Decl. Exs. B and C (the attached firm resumes of Gardy & Notis, LLP and Skellenger Bender, P.S.).

Accordingly, DCM has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(A) and (B) and is entitled to have its application for appointment as Lead Plaintiff, and its selection of Lead and Liaison Counsel approved by this Court.

### C.    DCM is the Presumptive Lead Plaintiff Because It has the "Largest Financial Interest" as Determined Under the PSLRA

The Exchange Act dictates that the Court shall appoint as lead plaintiff the class member who represents the largest financial interest in the relief sought by the action.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (identification of the most adequate Plaintiff, "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'") (internal citation omitted).

Here, the DCM incurred a loss of approximately $656,785 on its transactions in Dendreon stock.  *See* Grant Decl. Ex. A.  DCM believes that its investment in Dendreon common stock and its losses from such investments are greater than those of all other

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR
APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD
PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL
PAGE – 5

skellenger bender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

1  qualified movants seeking appointment as Lead Plaintiff. Therefore, DCM is presumptively

2  the most adequate plaintiff pursuant to the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

3       **D.**     **DCM Otherwise Satisfies Rule 23**

4       The PSLRA provides that in addition to possessing the largest financial interest in the

5  outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of

6  Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).

7  With respect to the claims of class representatives, Fed. R. Civ. P. 23(a) requires that (1) the

8  class is so numerous that joinder of all members is impracticable; (2) there are questions of

9  law or fact common to the class; (3) such claims are typical of those of the class; and (4) the

10  representatives will fairly and adequately protect the interests of the class. For purposes of a

11  motion to appoint lead plaintiff pursuant to the PSLRA, however, "parties generally limit the

12  inquiry to typicality and adequacy of representation." *Doral Bank Puerto Rico v. Wamu Asset*

13  *Acceptance Corp.*, No. C09-1557, 2010 WL 1180359, at *2 (W.D. Wash. Mar. 24, 2010). As

14  detailed below, DCM readily satisfies both the typicality and adequacy requirements of Rule

15  23.

16       **1.**     **DCM's Claims are Typical of the Claims of the Class**

17       Under Rule 23(a)(3), the claims or defenses of the representative parties must be

18  typical of those of the class. Typicality exists where the Plaintiffs' claims arise from the same

19  series of events and are based on the same legal theories as the claims of all the class

20  members. *See Armour*, 171 F. Supp. 2d at 1052 (citing *Hanon v. Dataprods. Corp.*, 976 F.2d

21  497, 508 (9th Cir. 1992)); *see also*, *Schlagal v. Learning Tree Int'l*, No. CV 98-6384, 1999

22  WL 672306 at *3 (C.D. Cal. Feb. 23, 1999) (the typicality requirement is met "if the

23  representatives' claims stem from the same event or course of conduct as other class

24  members' claims and are based on the same legal theory as the absent members"); *Slaven v.*

25  *BP America, Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) (a party satisfies the typicality standard

26

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR
APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD
PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL
PAGE – 6

12852 00101 nj031e3364

skellenger**bender**

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

1  where his claims stem from the same event or course of conduct as other class members'

2  claims and are based on the same legal theory).

3      Here, DCM seeks to represent a class of purchasers of Dendreon securities that have

4  identical, non-competing and non-conflicting interests.   DCM satisfies the typicality

5  requirement because, just like all other members of the class, it purchased Dendreon common

6  stock and suffered economic loss thereby when the price of Dendreon common stock declined

7  as a result of the materially false and misleading statements published by the defendants.

8          **2.      DCM will Fairly and Adequately Represent the Class**

9      The adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4) is satisfied

10  where it is established that a representative party "will fairly and adequately protect the

11  interests of the class."   The PSLRA directs this Court to limit its inquiry regarding the

12  adequacy of a proposed lead plaintiff to the existence of any conflicts between the interest of

13  the lead plaintiff and the members of the class.  This standard for adequacy is met if it appears

14  that (1) the named plaintiff has interests in common with, and not antagonistic to, the class'

15  interests; and (2) the plaintiff's attorneys are qualified, experienced and generally able to

16  conduct the litigation.  *See In re Emulex Corp. Sec. Litig.,* 210 F.R.D. 717, 720 (C.D. Cal.

17  2002); *Takeda v. Turbodyne Tech, Inc.* 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999).

18      DCM meets the adequacy requirement, as it will effectively manage this litigation and

19  will vigorously represent the interest of all members of the class.  Specifically, (1) DCM's

20  interests are aligned with, and not adverse to those of the Class; (2) DCM has obtained

21  qualified and experienced counsel; and (3) DCM has submitted a certification indicating its

22  willingness to assume the responsibilities of a class representative.  *See Doral Bank Puerto*

23  *Rico,* 2010 WL 1180359, at *2.

24

25

26

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR
APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD
PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL
PAGE – 7

12852 00101 nij031e3364

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

**E.      As An Institutional Investor with the Largest Financial Interest in the Relief Sought, DCM is Well-Suited for Appointment as Lead Plaintiff**

DCM is a classic example of the sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA – a sophisticated institutional investor with a real financial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts" by improving the quality of representation in securities class actions).  The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors such as DCM to serve as Lead Plaintiff.  The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate Plaintiff."

> *                *                *

> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds - small investors - ultimately have the greatest stake in the outcome of the lawsuit.  Cumulatively, these small investors represent a single large investor interest.  Institutional investors and other class members with large amounts at stake will represent the interests of the Plaintiff class more effectively than class members with small amounts at stake.

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in*, 1995 U.S.C.C.A.N. 730, 733.

Courts around the country have noted a Congressional preference to appoint institutional investors.  *See, e.g., In re Faro Techs. Sec. Litig.*, No. 6:05-CV-1810-ORL-22, 2006 WL 1119201, at *3 (M.D. Fla. Apr. 26, 2006 (favoring proposed institutional investor lead plaintiff); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1331 (N.D. Ala. 2000) (noting aim of PSLRA was to encourage institutional investors to control securities class actions); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR
APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD
PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL
PAGE – 8

12852 00101 nj031e3364



large institutional investors"); *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989, 2003 WL 21415287, at *2 (S.D.N.Y. Jun. 18, 2003 (one purpose behind the PSLRA is "to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel'") (citation omitted).  "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs."  *Id.; see also In re Cendant Corp. Litig.*, 264 F.3d at 244 (Congress "anticipated and intended that [institutional investors] would serve as lead plaintiffs."); *see also Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements . . ."); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor").

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions."  *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996).  Furthermore, Congress believed that "increasing the role of institutional investors in class actions would ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action."  *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress wanted to encourage large, sophisticated institutional investors to direct securities class actions, thereby supplanting the prior regime of "figurehead Plaintiffs who exercise no meaningful supervision of litigation").  Congress reasoned that the empowerment of institutional investors would result in the appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel.  *See In re Razorfish Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation . . . ."); *Gluck*, 976 F Supp.

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL PAGE – 9

12852 00101 nj031e3364



at 548 ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. Rep. No. 104-98, at 11 (1995). In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether Plaintiffs' attorneys are acting as faithful champions for the Plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"); *see also* S. Rep. No. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the most adequate Plaintiff provision").

DCM is ideally suited for the role as Lead Plaintiff. As a institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, it will be able to actively represent the class and ensure that the interests of all class members will be adequately represented in the prosecution of the action.

## II.      This Court Should Approve the DCM's Choice of Lead Counsel

DCM's choice of Lead Counsel satisfies the requirements of the PSLRA. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class. DCM selected and retained Gardy & Notis, LLP to serve as Lead Counsel for the class because of extensive experience litigating securities class actions. Gardy & Notis, LLP possess extensive experience litigating securities class actions and have successfully prosecuted numerous securities class actions on behalf of injured investors. This Court should also appoint Skellenger Bender, P.S. as Liaison Counsel. Both firms have the expertise and resources to effectively litigate this case on behalf of the Class. *See* Grant Decl. Exs. B and C. Thus, this Court may be assured that by approving DCM's choice of Lead Counsel, the class will receive the highest caliber of legal representation.

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR
APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD
PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL
PAGE – 10

12852 00101 nj031e3364

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CONCLUSION**

For the reasons stated above, DCM satisfies the requirements of the PSLRA for appointment as the most adequate plaintiff in this action and should be appointed Lead Plaintiff.  As the most adequate plaintiff, DCM respectfully requests that this Court: (1) appoint DCM as Lead Plaintiff pursuant to the PSLRA; and (2) approve DCM's selection of Gardy & Notis, LLP as Lead Counsel and Skellenger Bender, P.S. as Liaison Counsel in this action and in any subsequently filed and/or related cases.

DATED this 3rd day of October, 2011.

SKELLENGER BENDER, P.S.


By____s/ Jeffrey C. Grant_____
   Jeffrey C. Grant, WSBA #11046
   Attorneys for Discovery Capital Management
   1301 Fifth Avenue, Suite 3401
   Seattle, WA 98101
   206.623.6501 phone
   206.447.1973 fax
   jgrant@skellengerbender.com

   *Proposed Liaison Counsel for Plaintiff*

   GARDY & NOTIS, LLP
   Mark C. Gardy
   Jennifer Sarnelli
   560 Sylvan Avenue
   Englewood Cliffs, NJ 07632
   201.567.7377 phone
   201.567.7337 fax
   mgardy@gardylaw.com
   jsarnelli@gardylaw.com

   *Proposed Lead Counsel for Plaintiff*

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR
APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD
PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL
PAGE – 11

12852 00101 nj031e3364

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I certify that on October 3, 2011, I electronically filed the Motion of Discovery Capital Management for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Choice of Lead Counsel and Liaison Counsel, the proposed form of Order, and this Certificate of Service with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiff Amit Frias.

By ____s/ Jennifer Sarnelli_____
Jennifer Sarnelli
Attorney
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
201.567.7377 phone
201.567.7337 fax
jsarnelli@gardylaw.com

MOTION OF DISCOVERY CAPITAL MANAGEMENT FOR
APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD
PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL
PAGE – 12

12852 00101 nj031e3364

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501